IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BARRY EMMETT, #1383329 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv243 |
| TDCJ CORPORATION, ET AL. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Barry Emmett, a prisoner currently confined in the Hughes Unit of the Texas prison system, proceeding *pro se* but not *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**Procedural History and Factual Background**.

Plaintiff filed his original complaint on or about June 17, 2021, while he was housed at the Coffield Unit. (Dkt. #1). The original complaint contained very broad and vague claims. He initially sued the Texas Department of Criminal Justice (TDCJ), the University of Texas Medical Branch (UTMB), and Walker County, Texas. The Court severed the claims against Walker County, Texas, and transferred the claims to the Southern District of Texas. (Dkt. #4).

The Court then ordered Plaintiff to file an amended complaint (Dkt. #6) alleging specific facts that would allow the court to draw the reasonable inference that a violation of his civil rights occurred and/or that any individual defendant is liable for the harm alleged. As such, he was given

1

the opportunity to rectify the pleading deficiencies by filing an amended complaint. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994). Plaintiff filed his amended complaint on July 8, 2021 (Dkt. #7).

On or about July 15, 2021, Plaintiff filed a Second Amended Complaint. (Dkt. #9). In his second amended complaint, Plaintiff asserted claims pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. He sued TDCJ Executive Director Brian Collier, UTMB-Correctional Managed Care (UTMB-CMC) Owen Murray, Estelle Unit Adaptive Disability Services Directors Cotton, Armstrong, and Murphy, as well as the Coffield Unit grievance investigators. An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaint will be the governing complaint in this case.

Considering that Plaintiff raised separate and distinct claims in his Second Amended Complaint, the Court severed his First Amendment and RLUIPA claims from his ADA and medical deliberate indifference claims. (Dkt. #54). The Court directed the Clerk of Court to issue a new cause number and open a separate civil case for those claims. Plaintiff's claims against Defendants TDCJ, TDCJ Executive Director Bryan Collier, the UTMB, UTMB-CMC Director Owen Murray, UTMB ADA Disability Directors Cotton, Armstrong, and Murphy, the Coffield Unit Grievance Investigators, and the State of Texas regarding his ADA, Eighth Amendment medical deliberate indifference, and Eighth Amendment conditions of confinement claims remained pending in this cause at that time.

On March 20, 2023, Plaintiff filed a motion to dismiss claims and defendants (Dkt. #131), followed by Plaintiff's motion for leave to amend. (Dkt. #134). In his motion for leave to amend

(*Id*.), Plaintiff stated: "all claim[s] are dropped except aluminum salt. … I'm requesting leave to amend claim to drop all other claims." (*Id*.). The Court construed Plaintiff's motion as a motion for voluntary dismissal of Defendants TDCJ, UTMB, UTMB-CMC Director Owen Murray, UTMB ADA Disability Directors Cotton, Armstrong, and Murphy, the Coffield Unit Grievance Investigators, and the State of Texas. (Dkt. #149). The Court recommended that his motion be granted and that those Defendants and the claims against them be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). The Court further recommended that Plaintiff's aluminum salt claim against Defendant TDCJ Executive Director Bryan Collier remain pending. (*Id*.). The district judge accepted the Report and Recommendation (*Id*.) and granted Plaintiff's motion for voluntary dismissal. (Dkt. #153).

Three months later, Plaintiff submitted a letter stating that he did not request that any parties or claims be dismissed. (Dkt. #157). He asserts that the motion for leave to amend was not written by him and that the motion was a fraud. He contends that the parties and claims should be reinstated. On February 8, 2024, Plaintiff filed a motion to reinstate—requesting that all defendants be reinstated and that he did not request that all parties be dismissed. (Dkt. #161).

On May 8, 2024, Plaintiff filed a motion to reinstate parties. (Dkt. #170). In this motion, Plaintiff stated that sometime in 2023, he moved to dismiss some parties. He elaborated that during that time period, he went off his bipolar medications and went to an inpatient mental health treatment, and, therefore, he should not be held accountable for his actions. *Id.* The Court construed his letter and motions as a motion to reconsider its order granting his voluntary dismissal of all claims and defendants except for his aluminum-salt claim against the TDCJ Executive Director.

3

On July 15, 2024, the Court construed Plaintiff's motions to reinstate or reconsider as a motion to reconsider pursuant to Fed. R. Civ. P. 54(b). (Dkt. #174). After finding Plaintiff's motions to reconsider as unpersuasive, (Dkt. ##161, 170), the Court denied Plaintiff's motions and reiterated that the remaining claim is his aluminum-salt claim against the TDCJ's Executive Director. (Dkt. #174).

Against this backdrop, the following Report concerns Plaintiff's claim regarding the use of aluminum salt at the Coffield Unit. Plaintiff asserts that the use of 100% aluminum salt was banned in the 1970's. (Dkt. #9 at 9). He claims that TDCJ contracted with Global Packaging to provide salt to the Coffield Unit. (*Id*. at 9–10). He contends that Global Packaging provides salt that is 100% sodium aluminum silicate, which is over the 2% limit. As a result of this switch to aluminum salt, he claims he has been suffering from memory loss and dementia. (*Id*. at 10). He further contends that the Texas Board of Criminal Justice delegated the authority to enter into contracts to the Executive Director of TDCJ in BP-01.01-.03. Plaintiff seeks a jury trial and declaratory relief that his constitutional rights have been harmed.

**Preliminary Screening**.

As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir.1998) (per curiam). Section 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Discussion and Analysis.**

A.      **Claim for money damages against Defendant in his official capacity**

Plaintiff sues Defendant TDCJ Executive Director Bryan Collier, in his official capacity. He also seeks relief in the form of monetary damages. Plaintiff does not specify whether he is suing Defendant Collier in his official capacity for money damages. To the extent Plaintiff is seeking money damages from Defendant Collier in his official capacity, that claim should be dismissed.

When a plaintiff files suit against state officials in their official capacities, in effect, he is bringing suit directly against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), *cert. denied*, 565 U.S. 1079 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself")). Since the State has not consented to the suit, in as far as Plaintiff filed suit against Defendant for monetary relief in his official capacity, Defendant is shielded from this claim via the Eleventh Amendment. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996)). The Court recommends any claim seeking money damages from Defendant Collier in his official capacity be

5

dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. Deliberate Indifference Claim

Plaintiff claims that TDCJ is deliberately indifferent to his health and safety needs. He asserts that TDCJ contracts with Global Packaging to provide salt for use at the Coffield Unit. He contends that Global Packaging is providing 100% aluminum salt or sodium aluminum silicate. He claims that only 2% aluminum salt is allowed, and that 100% aluminum salt has been banned since the 1970s.[1] He suggests that he is suffering memory loss and dementia because he is ingesting aluminum salt. He asserts that TDCJ's Executive Director is liable because the Texas Board of Criminal Justice delegated the authority to enter into contracts for TDCJ to the Executive Director.

The Eighth Amendment to the United States Constitution "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To plead a constitutional violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that objectively "pos[e] a substantial risk of serious harm." *Id.* at 834. He must also allege facts showing that prison officials were subjectively deliberately indifferent to that risk to his health or safety. *Id.*; *see also Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (summarizing objective and subjective prongs of an Eighth Amendment violation). The deliberate indifference required to state a constitutional claim "is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001),

---

[1] The Court has been unable to locate a source that substantiates this allegation but accepts the allegation as true for the purposes of this Report.

and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *accord Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019). Thus, the prison official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Plaintiff's allegations do not satisfy this high standard.

Accepting Plaintiff's allegations as true, Plaintiff does not allege any facts that Defendant Collier was aware that Global Packing was providing 100% aluminum salt rather than the permissible 2% in its packaged product. He also does not allege any facts that Defendant Collier was aware that ingesting 100% aluminum salt could cause any type of memory problems or dementia. He further does not allege that Defendant Collier was aware that he was contracting on behalf of TDCJ for 100% aluminum salt versus regular table salt. Plaintiff draws no connection between his claims and Defendant Collier's awareness of aluminum salt and its potential risks. This is fatal to his claim.

Turning to Plaintiff's claims regarding the conditions of his confinement, prison officials violate "the Eighth Amendment only when two requirements are met." *Farmer*, 511 U.S. at 834. The courts consider (1) whether the alleged deprivation is "objectively, 'sufficiently serious'" such that the act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) whether the official had a "sufficiently culpable state of mind" in acting or failing to act. *Id.* In other words, there must be an "objective exposure to a substantial risk of serious harm" and "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). Both of these inquiries are fact

intensive. *Garrett v. Thaler*, 560 F. App'x 375, 380 n.3 (5th Cir. 2014) (per curiam). And the courts "have the usual authority" to determine which inquiry to address first and, if there is a failure on that element, there is no need to address the second element. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Courts "need not reach the subjective component" of an alleged Eighth Amendment violation when asserted claims do "not objectively demonstrate a sufficiently extreme deprivation," *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998), or vice versa.

Plaintiff fails to allege facts that would establish the personal involvement of Defendant Collier regarding any contract with Global Packing for aluminum salt. A plaintiff in a civil rights case must demonstrate not only a constitutional violation, but also personal involvement on behalf of those alleged to have violated the plaintiff's constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thompson v. Crnkovich*, 2017 WL 5514519 *2 (N.D. Tex. Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant."). "In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 622 (W.D. La. 2013). Plaintiff does not allege those necessary connections here.

To the extent Plaintiff sues Defendant Collier in a supervisor capacity, the Court notes that it is well established that a supervisory official may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *Monell v. New York City Dep't of*

8

*Social Servs.*, 436 U.S. 658, 691 (1978). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted). But "masters do not answer for the torts of their servants" under Section 1983. *Iqbal*, 556 U.S. at 677. Plaintiff does not allege that Defendant Collier was personally involved in deliberating acquiring aluminum salt for use at the Coffield Unit, other than the inference that either he or a subordinate signed a contract with Global Packaging. Accordingly, he fails to state a claim against Defendant Collier in his individual or supervisory capacity. This claim should be dismissed.

## C. Claims for a Declaratory Judgment

Plaintiff seeks a declaratory judgment that his constitutional rights were violated. Plaintiff, however, was transferred from the Coffield Unit to the Hughes Unit on or about May 1, 2024. (Dkt. ##169, 170). His claims for a declaratory judgment at the Coffield Unit became moot at that time. *Herman v. Holiday*, 238 F. 3d 660, 665 (5th Cir. 2001) (prisoner plaintiff's transfer from unit rendered claims for declaratory and injunctive relief moot).

The judicial power of federal courts is limited to only those "Cases" and "Controversies" referred to in Article III of the United States Constitution, and "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 562 (5th Cir. 1998). The party invoking federal jurisdiction bears the burden of

establishing three constitutionally mandated elements: (1) the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[;]'" (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly ... trace(able) to the challenged action of the defendant, and not ... th(e) result (of) the independent action of some third party not before the court[;]" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, 504 U.S. at 560-561. It is also clear that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) and *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974)).

Even if Plaintiff had suffered some type of conduct or condition that violated his constitutional rights while at the Coffield Unit, unless he can point to a concrete and continuing injury arising from the conditions at the Coffield Unit, his claim fails. Plaintiff has not done so here. Any suggestion that a declaratory judgment should be considered based on the possibility that Plaintiff might someday be returned to the Coffield Unit "is too speculative to warrant relief." *Herman*, 238 F.3d at 665. Consequently, Plaintiff's claims for a declaratory judgment is moot and should be denied.

### IV.   Conclusion

In conclusion, Plaintiff's amended complaint fails to state a claim upon which relief may be granted regarding Defendant in his official capacity for money damages pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff's claim against Defendant Collier in his individual capacity must be

dismissed because Plaintiff failed to allege any facts showing that Defendant was personally involved in any action or omission that deprived Plaintiff of his constitutional rights. His request for a declaratory judgment should also be dismissed for mootness.

## Recommendation

It is therefore recommended that Plaintiff's amended complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 19th day of July, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE